EXHIBIT 1

DocuSign Envelope ID: E6265406-527C-44D5-B454-06C5BB27D000

EEOC Received on January 19, 2023

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency( es) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974  See enclosed Privacy Act Statement and other information before completing this form | ☐ FEPA<br>☒ EEOC | **440-2023-03224** |

| ILLINOIS DEPARTMENT OF HUMAN RIGHTS | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr , Ms , Mrs )* | Home Phone *(Incl  Area Code)* | Date of Birth |
|---|---|---|
| Ms. Tracy Cohen | 312-315-8521 | 1/22/1969 |

| Street Address | City  State and Z P Code |
|---|---|
| 512 N. McClurg Ct., Unit 2212 | Chicago, IL 60611 |

Named  s the Emp oyer, Labor Organ zat on, Emp oyment Agency, Apprent cesh p Comm ttee, or State or Loca  Government Agency That I Be eve
D scr m nated Aga nst Me or Others.  *(If more than two  list under PARTICULARS below )*

| Name | No  Employees  Members | Phone No *(Include Area Code)* |
|---|---|---|
| Gucci America, Inc. d/b/a Gucci Chicago | 15+ | 312-664-5504 |

| Street Address | City  State and Z P Code |
|---|---|
| 900 N Michigan Ave | Chicago, IL 60611 |

| Name | No  Employees  Members | Phone No *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City  State and Z P Code |
|---|---|
| | |

D SCR M NAT ON BASED ON *(Check appropriate box(es) )*

☐ RACE   ☐ COLOR   ☒ SEX   ☐ REL G ON   ☐ NAT ONAL OR G N
☒ RETAL AT ON   ☒ AGE   ☒ D SAB L TY   ☐ OTHER *(Specify below )*

DATE(S) D SCR M NAT ON TOOK PLACE
Earliest          Latest
~1/2017

☒ CONT NU NG ACT ON

THE PART CULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I believe my employer, Gucci America, Inc., doing business as Gucci Chicago, is subjecting me discrimination based on sex (female), age (currently 53-years old), and disability (anxiety and depression), in violation of Title VII of the Civil Rights Act of 1964, as Amended. I also believe I am being retaliated against for complaining about discrimination. *Please see attached for additional particulars.*

|  want this charge filed with both the EEOC and the State or local Agency  if any will advise the agencies if  change my address or phone number and   will cooperate fully with them in the processing of my charge in accordance with their procedures | NOTARY   *When necessary for State and Local Agency Requirements* |
|---|---|
| I dec are under pena ty of perjury that the above  s true and correct. | I swear or aff rm that I have read the above charge and that  t s true to the best of my know edge,  nformat on and be ef.<br><br>S GNATURE OF COMPLA NANT |
| 1/19/2023     DocuSigned by:<br>1CEFCE753DEB46D... | SUBSCR BED AND SWORN TO BEFORE ME TH S DATE *(month, day, year)* |
| Date       Charging Party Signature | |

EEOC Received on January 18, 2023

PARTICULARS OF MS. TRACY COHEN

Since approximately 2017, I believe Gucci has continuously discriminated against me, based on my age (over 40), sex (female), and disability (anxiety and depression). I believe I have also been retaliated against for complaining about discrimination.

In 2006, I was hired by Gucci America, Inc.'s "Gucci Chicago" store as a Client Advisor/Sales Associate, located on Michigan Avenue in Chicago. Currently, there are 20 Client Advisors in the store. **Year to date, I have sold nearly $40 million in Gucci merchandise over the course of my 18-year tenure, making me one of Gucci America's top performers in the entire United States. Rather than treat me equally, the company has engaged in a continuous, discriminatory campaign in an attempt to push me out and replace me with younger salespeople.**

In 2014, Gucci gave the #1 sales associate in Chicago - ▇▇▇▇▇▇▇▇ (male, under 40) - a personal assistant after he reached $2.5 million in sales. <u>My supervisor told me that if I, too, attained $2.5M in sales, I would also get an assistant.</u>

By December 31, 2017, I reached $2.68 million in total sales. I waited a few months for my assistant, but he/she never arrived. Finally, in approximately April 2018, I complained, and stated I believed Gucci was discriminating against me based on my sex (female). Immediately thereafter, Gucci created a false write-up, which was my first write–up ever, listing a litany of reasons why my behavior did not meet company standards, and failing to address why I did not get an assistant.

In approximately August of 2018, ▇▇▇▇▇▇▇ was promoted to a corporate position in New York City. During the time he was at Gucci Chicago, for approximately 6-years, ▇▇▇ was sent to multiple, international selling events and training experiences, and buying trips.

**Upon David Benjamin's departure, I quickly moved to #1 in sales at Gucci Chicago, which I continue to maintain to this day**. I believed that Gucci was going to provide me with the same opportunities that it provided to ▇▇▇.

Not only did Gucci fail to provide me with the same opportunities as it did for ▇▇▇, Gucci is now providing those opportunities to younger associates, under 40, who are below me in sales. I believe this is a campaign to attempt to push me out of my #1 ranking because of my age.

Immediately upon ▇▇▇ departure two discriminatory things happened:
- Rather than disburse his clients throughout the store equally - which is allegedly the store's policy - Gucci worked with ▇▇▇ to selectively bequeath his clients to his best friends ▇▇▇ and ▇▇▇), who were the lowest in sales and under 40 years old.

EEOC Received on January 19, 2023

- Gucci told me that I would get ███████ assistant (███████) *but* I had to <u>share</u> him with two other people (███ r and ██████), who were under 40, and who sold approximately <u>$1 million less</u> annually than I did.

When I complained, stating I believed these practices were discriminatory, <u>Gucci said that if I hit $3M, I would get my own assistant. By December 31, 2018, I reached $3.69 million in total sales for 2018.</u>

Some time in early 2019, Gucci finally assigned an assistant to me (███████) while █████ worked as a "connection coordinator."  <u>By December 31, 2019, I reached over $3.84 million in total sales for 2019.</u>

<u>On or about January 2020, Gucci then assigned ██████ to me. In March 2020, the COVID pandemic hit. Despite the closure of the store, and the lack of consumer spending, by December 31, 2020, I reached approximately $3.15 million in total sales for 2020,</u> <u>making me #1 in the store (again).</u>

Then, in January 2021, my managers held a little "celebration to congratulate me on being #1"…and then told me that ██████ (male, under 40) was no longer going to be my assistant because he was becoming a salesperson (and now my direct competitor). Gucci did not provide me with a new assistant.

Now my direct competition, ██████ called my client and made derogatory comments about my age, in an attempt to steal him away from me. I reported this to management.

Throughout 2021, I complained to multiple high-level executives throughout Gucci about gender and age discrimination, and further stated that I believed Gucci was ignoring my complaints. My complaints about my ignored complaints were ignored.

And yet, during this time, my sales continued to grow.

In November of 2021, I told HR and management that I was experiencing increased depression, anxiety and panic attacks. I had previously told management that I had been diagnosed with depression and anxiety and that I was medicated. And yet, my regional manager (Lisa Gutierrez) called me "crazy." I complained to the head of HR but  never heard back.

**By December 31, 2021, I made $5,002,336 in total sales for 2021**. In response, rather than provide me with an assistant, Gucci assigned the highest sales goals in the entire store to me. As a result, I had no choice but to either a) not reach the goal and risk getting fired, or b) come in on my days off to meet my goals. It is also worth noting that it was humanly impossible to reach these goals solely while on-the-clock and in the store. **As a result, I am selling Gucci products 24/7, but not getting paid for hours that I am selling outside of the store.**

EEOC Received on January 18, 2023

And yet despite having my biggest year ever, I learned that the company was demoting me from Master Client Advisor to the Elite Client Advisor which is the lowest ranking in the "GG Club." The company failed to provide me with an explanation as to why I was being demoted. In fact, when I questioned the title demotion, I was told I didn't know what the word "demotion" meant.

**Throughout January 2022, I continued to complain that I had no assistant. I was told by Tommaso DeVecchi (Executive Vice President Retail and Wholesale at Gucci Americas) that they were "working on something," and "needed more time." This was a lie, as detailed more fully below.**



Meanwhile, in between February and March 2022, Gucci promoted ███ (male under 40) and ███ (male under 40), gifted them top clients, and sent them to selling events. Both ███ and ███ sold less than I did. I was not promoted or sent to selling events. ███ promotion was to Client Advisor/Supervisor, making him one of my supervisors.

On February 25, 2022, I complained that I believed I was being zoned discriminatorily. On February 28, 2022, my manager told me that I was going to get an assistant back. This was a lie.

**On March 3, 2022, management sent an email to the team, asking sales associates to nominate top clients for Billie Eilish tickets. When I nominated my client (over 40), management rejected him, stating, "I believe corporate wants a Gen Z or Millennial audience…we can try to send him to Elton John."** Upon information and belief, Gucci gave the tickets to a customer via a Client Advisor who is under 40. I complained that this was a discriminatory practice toward both me and my client.

On March 7, 2022, following my complaint, I learned that my customer experience score, called an "NPS Score," dropped. This change in my NPS score dropped me from "Master Client Advisor," which I earned in 2021 for selling #3M, to "Elite Client Advisor," depriving me of rewards and status. Additionally, the abovementioned Advisors (under 40) - who were "gifted" David's clients at the time of his promotion - were now "ranked" above me despite selling far less than I did.

On March 8, 2022, I complained that I felt that I was being demoted, that I exceeded expectations, and that the company refused to help me, despite helping associates under the age of 40. In response, my manager told me, "You did $5 million in sales, so you don't need help."

When I further complained (again) that I believed the company was intentionally setting me up to have a psychological breakdown, despite knowing I suffered from depression and anxiety, another manager told me that I had to "make a life choice" between my job and my health. Also on March 8, 2022, I complained that ███ (under 40) and Aneta (under 40), were increasing their sales because 1) they were continuously gifted top clients, and 2) they were being sent to sales events and fashion shows. I stated that I was not given these opportunities, and I believed

DocuSign Envelope ID: 6B78B189-8B33-4C65-9E56-61039C217312

this was discriminatory. Additionally, I complained that the company was using metrics that had nothing to do with my performance, in an effort to place me at the lowest tier of the "GG Club." The company refused to explain.

In the meantime, the company continued to increase my sales goals. Each month, I would be congratulated for meeting and exceeding my sales targets, and my managers would say, "Please let us know if we can help you with anything!" while continuing to ignore my pleas for help, and my complaints about being treated differently than both younger and/or male employees.

**On March 17, 2022, I had a phone call with Tomasso DeVecchi (Executive Vice President Retail and Wholesale at Gucci Americas). He promised me an assistant, who never arrived.**

And yet, in 2022, Gucci gave ▮▮▮▮▮▮ (Bal Harbour location, male, under 40), an assistant. Yet, in 2021, I sold more than ▮▮▮▮▮. Then Gucci gave ▮▮▮▮▮▮ (Costa Mesa location, male, under 40) an assistant. As a result, these two associates have since surpassed me in sales.

At the end of March 2022, despite being #1 in total sales for March, the company still refused to assign me an assistant, or provide me with the perks and opportunities it was giving to younger employees. And yet, rather than address my complaints of discrimination, and reward me like it did the other associates under 40 with lower numbers than me, the company continued to increase my sales goals. Additionally, Gucci continued to send younger associates with fewer sales to international selling events where their clients were able to make large purchases. I, on the other hand, was not provided with these sales opportunities.

In July 2022, I was told that Elton John tickets were "extremely expensive," and Gucci could not cover the expense for my ticket (despite being a $5M salesperson). Meanwhile, Gucci sent younger employees with fewer sales to concerts and fashion events, allowing them to network with potential new clients and keep their current clients as active purchasers.

In September, ▮▮▮▮ (male, under 40), who was gifted ▮▮▮▮ clients as mentioned above, transferred to Los Angeles. Just as they allowed ▮▮▮ to do, management allowed ▮▮▮ to bequeath his clients to ▮▮▮ (male, under 40) and Aneta (female, under 40). It is worth noting that management has never given me a former associate's top client upon that associate's departure from the store.

I continued to complain about discrimination.

On September 28, 2022, I was pulled off the floor by my manager and given a write-up. As a result, I was psychologically unable to return to the floor to continue to sell, and left work early, which adversely affected my sales.

On the night of September 28, 2022, through counsel, I complained to Gucci for the above mentioned reasons. My complaint was ignored.

In November 2022, the company cut the maximum number of hours we could work, from 40 to 35. And yet, they increased my December goal to $500,000 - the highest goal in the store. Again, it was not humanly possible to sell half a million dollars of product in 140 hours (35 hours x 4 weeks). As a result, I worked off-the-clock and around-the-clock, unpaid, to meet this goal, which I did.

**In December 2022, I sold $506,657 worth of Gucci merchandise. In 2022, my overall sales were $4,056,013, the highest in the store.** Rather than reward me, like it does those under 40, the company has engaged in a concerted effort to reduce my ranking and take away my sales.

On January 13, 2023, I learned that ███████ (under 40 and ranked lower than me in sales), was quietly sent to Milan Fashion Week for Gucci's first stand-alone Men's Show in three years which is also the first show since the departure of Gucci's Creative Director Alessandro Michele. Needless to say, this was a major event.

███████ has been with the company for approximately eight years, and has traveled to approximately 8-9 worldwide events, including Paris and LA. On the other hand, I have been with the company for 18 years as a top performer, and have only been sent to two events. Additionally, ███████ has also been given two private in-store events for her clients. I have never been given this opportunity, despite my performance, which is greater than hers. Additionally, I have asked to be sent to selling events with my top-spending clients and my requests are always ignored. **I believe Gucci discriminatorily hands out international shopping events and private shopping experiences in an effort to get younger sales associates to make greater sales than they otherwise would make if the playing field was the same. I have asked management multiple times to explain the metrics for these opportunities, and every time I am ignored.**

Now, the company is taking my clients away from me and giving them to associates under 40.

On January 14, I was supposed to leave at 6:30 p.m., but was still at the store finishing my last sale. At 6:42 p.m. management stated in the group chat that one of my clients was in the store, and asked for me. I asked management to help me by assisting my client, because I needed to leave to be with my father, who was dying. It is a known store practice that if an associate is unavailable to assist their known client, management will assist the client and give the credit for the sale to the unavailable associate. As just one example, a male associate under 40 was assisted by management while he was at lunch on this same day. Rather than help me, management gave the sale to another associate, who is under the age of 40.

During the same week, my manager again gave a sale away to another associate (under 40), despite the store knowing that the client was mine, and despite the known store practice

EEOC Received on January 19, 2023

described above. I complained, specifically stating that I believed this was a deliberate discriminatory effort to take away my sales, money, and opportunities.

On January 18, 2023, following a complaint, my manager told me, again, "Thank you for your email. I've shared your concerns."

Signed: _____

TRACY COHEN

1/19/2023

Date: _____

EXHIBIT 2

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Chicago District Office**
230 S Dearborn Street
Chicago, IL 60604
(800) 669-4000
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 07/20/2023

**To:** Tracy Cohen
512 N. McClurg Ct. Unit 2212
Chicago, IL 60611
Charge No: 440-2023-03224

EEOC Representative and email:     TIEREN DOKES
Federal Investigator
tieren.dokes@eeoc.gov

---

### DISMISSAL OF CHARGE

The EEOC has granted your request for a Notice of Right to Sue, and more than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 440-2023-03224.

On behalf of the Commission,

Digitally Signed By:Diane I. Smason
07/20/2023
_____
Diane I. Smason
Acting District Director

**Cc: Gucci America, Inc. D/B/A Gucci Chicago**

Peter Seltzer
Gucci Headquarters
195 BROADWAY FL 12
New York, NY 10007

Rachel Cowen
McDermott Will & Emery LLP
444 W LAKE ST STE 4000
Chicago, IL 60606

Jean Edmonds
McDermott Will & Emery LLP
444 W LAKE ST STE 4000
Chicago, IL 60606

Tamara Holder-DeMaio
917 W. WASHINGTON BLVD.  Suite 222
Chicago, IL 60607

Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 440-2023-03224 to the District Director at Diane I. Smason, 230 S Dearborn Street

Chicago, IL 60604.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

Enclosure with EEOC Notice of Closure and Rights (01/22)

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to: https://www.eeoc.gov/eeoc/foia/index.cfm.

### NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.**

- ✓ **Only one** major life activity need be substantially limited.

- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

- ✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or "**in remission**" (e.g., cancer) is a disability if it **would be substantially limiting when active**.

- ✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

- ✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

- ✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

- ✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For moreinformation, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

EXHIBIT 3

STATE OF ILLINOIS )
                   ) **ss**
COUNTY OF COOK )

CHARGE NO. **2023CR2358**

## AFFIDAVIT OF SERVICE

Christina P Antony, deposes and states that s/he served a copy of the attached **NOTICE OF OPT OUT OF THE INVESTIGATIVE AND ADMINISTRATIVE PROCESS, RIGHT TO COMMENCE AN ACTION IN CIRCUIT COURT OR OTHER APPROPRIATE COURT OF COMPETENT JURISDICTION, AND NOTICE OF ADMINISTRATIVE CLOSURE** on each person named below by depositing the same on November 15, 2023 , in the U.S. Mailbox at 555 West Monroe Street, Chicago, Illinois, properly posted for FIRST CLASS MAIL, addressed as follows:

| For Complainant | For Respondent |
|---|---|
| Tamara N. Holder | Rachel Cowan |
| 917 W. Washington Blvd. | McDermott, Will & Emery |
| Suite 222 | 444 W. Lake St. |
| Chicago, IL 60607 | Suite 4000 |
| | Chicago, IL 60606 |

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that s/he verily believes the same to be true.

_____
Christina P Antony

## PLEASE NOTE:

The above-signed person is responsible only for <u>mailing</u> these documents. If you wish a review of the findings in this case, you must complete the Request for Review form attached. Department of Human Rights' staff are not permitted to discuss the investigation findings once a Notice of Determination has been issued.

**STATE OF ILLINOIS**
**DEPARTMENT OF HUMAN RIGHTS**

**IN THE MATTER OF:**
TRACY COHEN,

|                |     |                   |              |
|----------------|-----|-------------------|--------------|
|                | )   |                   |              |
|                | )   |                   |              |
|                | )   |                   |              |
| COMPLAINANT,   | )   | CHARGE NO.        | 2023CR2358   |
|                | )   | EEOC NO.          | 440-2023-03224 |
| AND            | )   |                   |              |
| GUCCI AMERICA, INC., | ) |                 |              |
|                | )   |                   |              |
|                | )   |                   |              |
|                | )   |                   |              |
|                | )   |                   |              |
| RESPONDENT.    | )   |                   |              |

<u>NOTICE OF OPT OUT OF THE INVESTIGATIVE AND ADMINISTRATIVE PROCESS, RIGHT TO COMMENCE AN ACTION IN CIRCUIT COURT OR OTHER APPROPRIATE COURT OF COMPETENT JURISDICTION, AND NOTICE OF ADMINISTRATIVE CLOSURE</u>

<u>For Complainant</u>
Tamara N. Holder
917 W. Washington Blvd.
Suite 222
Chicago, IL 60607

<u>For Respondent</u>
Rachel Cowan
McDermott, Will & Emery
444 W. Lake St.
Suite 4000
Chicago, IL 60606

DISMISSAL / NOTICE DATE: November 15, 2023

Date Perfected Charge Filed: July 20, 2023          Date Opt Out Request Filed: November 7, 2023

YOU ARE HEREBY NOTIFIED that pursuant to Section 7A-102(C-1) of the Illinois Human Rights Act (775 ILCS 5/7A-102(C-1)), Complainant having filed a written request to opt out of the Illinois Department of Human Rights' investigation and administrative processing of the above-captioned charge, the IDHR issues this Notice of Opt Out of the Investigative and Administrative Process, and the Right of Complainant to Commence an Action in the Circuit Court or other appropriate court of competent jurisdiction within 90 days from the date of this Notice and Order, as identified above.

- Complaint filed and serve a copy of the complaint to the Department and Respondent on the same date that the complaint is filed with the circuit court or other appropriate court of competent jurisdiction.
- Complainant may not file or refile a substantially similar charge with the Department arising from the same incident of unlawful discrimination or harassment.

NOW, THEREFORE, it is further hereby ORDERED that the Department cease the investigation and **ADMINISTRATIVELY CLOSE** the charge of civil rights violation(s).

DEPARTMENT OF HUMAN RIGHTS

BY: _Brent A. Harzman_

Brent A Harzman, Director
Charge Processing Division



# ILLINOIS DEPARTMENT OF
# Human Rights

JB Pritzker, Governor
James L. Bennett, Director

November 15, 2023

Tamara N. Holder
917 W. Washington Blvd., Ste. 222
Chicago, IL 60607

Rachel Cowen
McDermott Will & Emery LLP
444 W. Lake St Ste. 4000
Chicago, IL 60606

Re:    **Tracy Cohen vs. Gucci America Inc**
       **Charge No. 2023CR2358**

Dear Complainant and Respondent:

Please be advised that on November 13, 2023, the Illinois Department of Human Rights ("Department") issued in error a notice of dismissal for the above-identified case. By this letter, the Department is vacating and rescinding that notice of dismissal.

Accordingly, the Department has determined that the notice of dismissal dated November 13, 2023, was issued due to administrative error and therefore, that notice of dismissal is null and void.

Attached to this letter and served on you is the proper notice of opt out of the investigative and administrative process, right to commence an action in circuit court or other appropriate court of competent jurisdiction, and order of administrative closure.

The Department apologizes for any inconvenience to you.

Sincerely,

Brent A. Harzman
Director, Charge Processing Division

Jss
cc:    Investigation file

| STATE OF ILLINOIS | ) | |
|---|---|---|
| | ) | ss |
| COUNTY OF COOK | ) | |

**AFFIDAVIT OF SERVICE**

CHARGE NO. 2023CR2358

Amauryana Mann, deposes and states that s/he served a copy of the attached **NOTICE OF DISMISSAL**

on each person named below by depositing the same on November 13, 2023 , in the U.S. Mailbox at 555 West

Monroe Street, Chicago, Illinois, properly posted for FIRST CLASS MAIL, addressed as follows:

For Complainant

Tamara N. Holder
917 W. Washington Blvd., Ste. 222
Chicago, IL 60607

For Respondent

Rachel Cowen
McDermott Will & Emery LLP
444 W. Lake St Ste. 4000
Chicago, IL 60606

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that s/he verily believes the same to be true.

Amauryana Mann

**PLEASE NOTE:**

The above-signed person is responsible only for mailing these documents. If you wish a review of the findings in this case, you must complete the Request for Review form attached. Department of Human Rights' staff are not permitted to discuss the investigation findings once a Notice of Determination has been issued.

**STATE OF ILLINOIS**
**DEPARTMENT OF HUMAN RIGHTS**

**IN THE MATTER OF:**

| | |
|---|---|
| TRACY COHEN, | ) |
| | ) |
| | ) |
| COMPLAINANT, | ) |
| AND | ) |
| | ) |
| GUCCI AMERICA, INC., | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| RESPONDENT. | ) |

CHARGE NO.     2023CR2358
EEOC NO.   440-2023-03224

## NOTICE OF DISMISSAL

<table>
<tr><td>For Complainant</td><td>For Respondent</td></tr>
<tr><td>Tamara N. Holder<br>917 W. Washington Blvd., Ste. 222<br>Chicago, IL 60607</td><td>Rachel Cowen<br>McDermott Will & Emery LLP<br>444 W. Lake St Ste. 4000<br>Chicago, IL 60606</td></tr>
</table>

DISMISSAL / NOTICE DATE: November 13, 2023

The Director of the DEPARTMENT OF HUMAN RIGHTS (Department) has entered the findings identified in the in the enclosed investigation report.

**DISMISSAL**

YOU ARE HEREBY NOTIFIED that based upon the enclosed investigation report, the Department has determined that there is a **LACK JURISDICTION** in support of the allegation(s) identified in the enclosed investigation report **(see investigation report).**

Accordingly, pursuant to Section 7A-102(D) of the Act (775 ILCS 5/1-101 et seq.) and the Department's Rules and Regulations, (56 Ill. Adm. Code.  Chapter II, 2520.560) the charge is HEREBY DISMISSED

**PROCEDURE:**

1.  If Complainant disagrees with this action, Complainant may:

    a.  REQUEST FOR REVIEW: Seek review of this dismissal before the Illinois Human Rights Commission (Commission), by filing a "Request for Review" with the Commission by the request for review filing deadline date below. Respondent will be notified by the Commission if a Request for Review is filed.  You can file the Request for Review by email, mail, personal delivery, or fax to:

**Page 2**
**Notice of Dismissal**
**Charge No. 2023CR2358**

> Illinois Human Rights Commission
> Michael A. Bilandic Building
> 160 N. LaSalle Street, Suite N-1000
> Chicago, IL 60601
> Email: HRC.News@illinois.gov
> Fax: (312) 814-6517

**REQUEST FOR REVIEW FILING DEADLINE DATE: February 16, 2024**

You may review or request a copy of your investigation file, after the Department's completion of the investigation, to help prepare your Request for Review. The Department will provide you with a specific date and time for you to review your investigation file. Files larger than fifty (50) pages will be sent to an outside vendor for copying. The Department is not responsible for the fees charged by the vendor. Call (312) 814-6262 to make arrangements.

**OR**

b.  CIVIL ACTION: Commence a civil action in the appropriate state circuit court within ninety (90) days after receipt of this Notice. The civil action should be filed in the circuit court in the county where the civil rights violation was allegedly committed. If you intend to exhaust your State remedies, please notify the Equal Employment Opportunity Commission (EEOC) immediately. The EEOC generally adopts the Department's findings. The Appellate Courts in Watkins v. Office of the State Public Defender, __ Ill. App. 3d __, 976 N.E.2d 387 (1st Dist. 2012) and Lynch v. Department of Transportation, __ Ill. App. 3d__, 979 N.E.2d 113 (4th Dist. 2012), have held that discrimination complaints brought under the Act against the State of Illinois in the Illinois Circuit Court are barred by the State Lawsuit Immunity Act. (745 ILCS 5/1 et seq.). Complainants are encouraged to consult with an attorney prior to commencing a civil action in the Circuit Court against the State of Illinois.

2.  For Equal Employment Opportunity Commission (**EEOC**) **cross-filed charges** **ONLY**:

Complainant has the right to request that the EEOC perform a Substantial Weight Review (SWR) if:
a.  An EEOC charge number is cited above;
**AND**
b.  The charge alleges violations of federal laws enforced by the EEOC;
**AND**
c.  Complainant submits to EEOC a written and signed request for a Substantial Weight Review within fifteen (15) days of either:

  i.  Receipt of this notice, if Complainant does NOT file a "Request for Review" with the Human Rights Commission (HRC);
**OR**
  ii.  Receipt of the HRC's final notice/order if Complainant filed a "Request for Review" with the HRC. (This means that if you made a "Request for Review" with the HRC, you must wait to request a SWR from EEOC until after you receive notice of resolution of the HRC review, which may take many months up to a year or more).

**EEOC will not honor any request for a Substantial Weight Review that does not meet requirements (a), (b) and (c) above. If you have a pending "Request for Review" with HRC and you make a request for SWR with EEOC before you receive a final notice/order from the HRC, you will be asked to re-submit your request for SWR after you receive notice of resolution from the HRC.**

**Page 3**
**Notice of Dismissal**
**Charge No. 2023CR2358**

If you choose to file a request for a Substantial Weight Review, and the allegation(s) occurred in one of the following counties: **Alexander, Bond, Calhoun, Clinton, Greene, Jackson, Jersey, Macoupin, Madison, Monroe, Perry, Pulaski, Randolph, St. Clair, Union, or Washington**, you may email your request for a Substantial Weight Review to, or mail it to:

> EEOC
> Attn: State, Local, and Tribal Programs Manager
> Robert A. Young Federal Building
> 1222 Spruce St., Rm 8.100,
> St. Louis, MO 63103.
> Email: Joseph.Wilson@eeoc.gov

For allegation(s) that occurred in **all other Illinois counties**, you may email your request for a Substantial Weight Review, or mail it to:

> EEOC
> Attn: State, Local, and Tribal Programs Manager
> John C. Kluczynski Federal Building
> 230 South Dearborn Street, Suite 1866
> Chicago, Illinois 60604.
> Email: Sherice.Galloway@eeoc.gov

**PLEASE NOTE: The Department cannot provide any legal advice or assistance. Please contact legal counsel, your city clerk, or your county clerk with any questions.**

> DEPARTMENT OF HUMAN RIGHTS
> James L. Bennett
> Director

**STATE OF ILLINOIS**
**HUMAN RIGHTS COMMISSION**

**IN THE MATTER OF:**
TRACY COHEN,                                              )
                                                         )
                                                         )
                        COMPLAINANT,                     )          CHARGE NO.   2023CR2358
                                                         )          EEOC NO.   440-2023-03224
AND                                                      )
                                                         )
GUCCI AMERICA, INC.,                                     )
                                                         )
                                                         )
                                                         )
                                                         )
                        RESPONDENT.                      )

<u>**REQUEST FOR REVIEW FORM**</u>

<u>For Complainant</u>                                    <u>For Respondent</u>
Tamara N. Holder                                         Rachel Cowen
917 W. Washington Blvd., Ste. 222                        McDermott Will & Emery LLP
Chicago, IL 60607                                        444 W. Lake St Ste. 4000
                                                         Chicago, IL 60606

**TO:** TRACY COHEN,

**DISMISSAL DATE: November 13, 2023**

**REQUEST FOR REVIEW FILING DEADLINE DATE: February 16, 2024**

| ⚠ | If you do not file a Request for Review by the filing deadline date, your case will be over. | ⚠ |
|---|---|---|

I am asking the Illinois Human Rights Commission (Commission) to review the dismissal of my charge by the Illinois Department of Human Rights (Department).

My Current Address (please print clearly):

Street Address_____ Apt/Unit #_

City_____ State_____ Zip_____

Email Address*_____ Phone Number (_____)_____
* If you provide an email address, the Commission will send all future documents to you only by email. You should use an email address that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notices, or documents from other parties.

<u>**How To Fill Out This Form**</u>

In the space below, you can explain why your charge should not have been dismissed. If you need more space, write on the back of this form or attach extra pages. You can include supporting materials and evidence with this Request for Review. The form, extra pages, and supporting materials and evidence must not be longer than **45 pages.**

You can look at the Department's investigation file to help you prepare your Request for Review. Call the Department at (312) 814-6262 to set up a time to look at the file. You will need to call at least 3 business days before you want to look at the file. Do not wait until the last minute to ask to look at the file.

SIGNATURE            DATE

<u>**How To File This Form**</u>

You must file the Request for Review **by the filing deadline date** on the first page of this form. You can file the Request for Review by email, mail, personal delivery, or fax to:

    Mail / Delivery:    Illinois Human Rights Commission
                     Michael A. Bilandic Building
                     160 N. LaSalle Street, Suite N-1000
                     Chicago, IL 60601
         Email:        HRC.News@illinois.gov
         Fax:          (312) 814-6517

After you file your Request for Review, you **cannot** give the Commission more information or supporting materials. If you need more time to complete your Request for Review, you can file a motion for extension of time. You must file your motion by the filing deadline date on the first page of this form.

For more information about how to fill out and file this form, go to the Commission's website at hrc.illinois.gov/rules/request-for-review.

HB1509/HB59 HRC R/R 10/10/2023

Michael A. Bilandic Building, 160 North LaSalle Street, Suite N-1000
Chicago, Illinois 60601 Phone (312) 814-6269
TTY (866) 832-2298 Fax (312) 814-6517

Jefferson Terrace, 300 West Jefferson Street, Suite 108
Springfield, Illinois 62702 Phone (217) 785-4350
TTY (866) 832-2298 Fax (217) 524-4877

# STATE OF ILLINOIS
# DEPARTMENT OF HUMAN RIGHTS
# INVESTIGATION REPORT

| | | | |
|---|---|---|---|
| **Complainant:** | Tracy Cohen | **IDHR No.:** | 2023CR2358 |
| **Respondent:** | Gucci America, Inc. | **EEOC No.:** | 440-2023-03224 |

**Investigator:** Thomas F. Roeser    **Supervisor:** TFR      **Date:** 10/25/23

**Issue/Basis:**

A. Unequal terms and conditions/ sex
B. Unequal terms and conditions/age
C. Unequal terms and conditions/disability
D. Unequal terms and conditions/retaliation

**Finding:**

A. Lack of Jurisdiction
B. Lack of Jurisdiction
C. Lack of Jurisdiction
D. Lack of Jurisdiction

**Jurisdiction:**

| | |
|---|---|
| Alleged violations: | A.-D.: 1/17-1/19/23 |
| Charge filed: | 1/19/23 |
| Charge perfected: | 7/20/23 |
| Number of employees: | Over 15 |

**Findings**

On January 19, 2023, Complainant filed a charge with the United States Equal Employment Opportunity Commission ("EEOC") alleging that a civil rights violation had been committed. On July 12, 2023, staff mailed Complainant a letter stating that Complainant's charge was automatically filed with the Department and that Complainant had 30 days from receipt of EEOC's findings to send the Department a copy; the letter was not returned as undeliverable. On October 4, 2023, Complainant submitted to the Department a copy of EEOC's findings.

Section 7A-102(A-1)(1) of the Human Rights Act states that Complainant must submit to the Department a copy of the EEOC's determination within 30 days after service on Complainant. Therefore, Complainant's EEOC determination was not timely filed.

EXHIBIT 4

EEOC Form 5 (5/01)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | 440-2023-08632 |
| ☒ EEOC | |

**ILLINOIS DEPARTMENT OF HUMAN RIGHTS** and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Ms. Tracy Cohen | 312-315-8521 | 1/22/1969 |

| Street Address | City, State and ZIP Code |
|---|---|
| 512 N. McClurg Ct., Unit 2212 | Chicago, IL 60611 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| Gucci America, Inc. d/b/a Gucci Chicago | 15+ | 312-664-5504 |

| Street Address | City, State and ZIP Code |
|---|---|
| 900 N Michigan Ave | Chicago, IL 60611 |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☒ RETALIATION   ☒ AGE   ☒ DISABILITY   ☐ OTHER *(Specify below.)*

DATE(S) DISCRIMINATION TOOK PLACE

| Earliest | Latest |
|---|---|
| ~1-19-23 | |

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I believe my employer, Gucci America, Inc., doing business as Gucci Chicago, is retaliating against me for filing a charge of discrimination in January 2023, in violation of Title VII of the Civil Rights Act of 1964, as Amended. *Please see attached for additional particulars.*

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |

| 7/25/2023 | DocuSigned by: [signature] 1CEFCE763DEB46D... |
|---|---|
| Date | Charging Party Signature |

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)*

**PARTICULARS OF TRACY COHEN**

On January 19, 2023, I filed a charge of discrimination against my employer, Gucci America, Inc., doing business as Gucci Chicago.

I believe the company is engaging in additional hostile conduct, and retaliating against me for filing the charge, and is looking for pretextual reasons to fire me, including but not limited to the following conduct:

- Giving my clients away to other sales associates, under 40, despite knowing that the they are my clients and it is against company policy to engage in this behavior;
- Taking away my ability to advocate for myself, and when I do, documenting it to use against me. For example:
- On Saturday, July 1, 2023 - the last day of the fiscal month - management came up to me on the floor while I was carrying out my job duties, and with other sales associates/"client advisors" present, as well as active customers, during business hours, and told me that my goal was $305,000 for July, and, "We know it's not fair but it should have been even higher with the way you're trending." This is the first time in my 18- year career at Gucci where I was given my new sales goal in front of others (instead of in email format on the first day of the new month) on the last day of the fiscal month, during business, while I was carrying out my job duties. Management did this to deliberately to cause me stress and force me to act out, despite knowing that I have complained in the past about unfair goals, and despite knowing that I am suffering from anxiety.
- When I stated that I planned to take a couple of paid time off days in July, and asked to have my goal prorated, I was ignored, despite company policy to prorate a goal that reflects selling hours that I would be in the store. Invariably, an individual client advisor's goal takes into account days that they are not working, and I had previously stated I was going to be unavailable on certain days. I further stated that I needed to take time because I attempted to do so in June but was interrupted, and ended up working remotely to achieve my June goal.
- On Sunday, July 2, 2023, I explained to management that I was still upset. They then told me that a customer did not want to work with me despite me not knowing the reason, and despite having a high "NPS score" for customer service, qualifying me for GG level status.
- I called off on Monday, July 3, 2023. I was out of July 4 and 5, 2023.
- On Thursday, July 6, 2023, I received an email thanking me for making the June goal and my excellent results in June and again reiterating that my goal was $305,000, despite knowing that I had complained, said it was unfair and discriminatory to goal me that high, and that I had also requested time off. I complained again and asked if the goal would be prorated. In response, I was called into the office and suspended and under investigation for events that happened over the weekend. When I asked for an explanation, they said, "You know what they are." This is the first time I have ever been suspended in my 18-year career that I had ever been suspended. I was told that I could continue to sell product from home, but that I could not make contact with anyone other than one person, thereby isolating me from my peers.
- Management then called me while I was home, on Tuesday, July 11, 2023, and told, "You're welcome to return to work tomorrow."
- I returned to work. Management then called me into the office for a final written warning, accusing me of calling my manager on her day off, even though the company calls me on my days off, listing alleged violations of company policy that occurred over 9 months ago, despite the company previously stating that write-ups fall off your record after 90 days. I then asked management if the write-up affected my GG status, and for an explanation of the 90-day policy that I believed I existed. Management refused to answer me.
- After receiving the "final written warning, I returned to the floor continued to sell Gucci product. Then, I was told by my manager that I was suspended from GG Club, and told that I could not use my GG club clothing allowance to purchase an item, 10 days after the write-up and after I asked for clarification on the day of the write-up. When I asked for further clarification, I was told that HR was supposed to call me, which never occurred.

DocuSign by:

1CEFCE753DEB46D...

7/25/2023

EXHIBIT 5

DocuSign Envelope ID: 57D3E8DA-89A7-4C5B-8AFB-8D2293129E2E
Case: 1:24-cv-00569 Document #: 1-1 Filed: 01/22/24 Page 30 of 59 PageID #:92
EEOC RECEIVED: 10-10-2023

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 440-2023-08632 |

| ILLINOIS DEPARTMENT OF HUMAN RIGHTS | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Ms. Tracy Cohen | 312-315-8521 | 1/22/1969 |

| Street Address | City, State and ZIP Code |
|---|---|
| 512 N. McClurg Ct., Unit 2212 | Chicago, IL 60611 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| Gucci America, Inc. d/b/a Gucci Chicago | 15+ | 312-664-5504 |

| Street Address | City, State and ZIP Code |
|---|---|
| 900 N Michigan Ave | Chicago, IL 60611 |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN<br>☒ RETALIATION ☒ AGE ☐ DISABILITY ☐ OTHER *(Specify below.)* | Earliest: ~1/2017  Latest: 10/4/2023<br>☐ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I believe my employer, Gucci America, Inc., doing business as Gucci Chicago, retaliated against me for filing a charge of discrimination in January 2023, in violation of Title VII of the Civil Rights Act of 1964, as Amended. I continued to complain about discrimination, and the company fired me for pretextual reasons, on October 4, 2023, in retaliation for complaining about discrimination and then subsequently filing a retaliation charge on July 25, 2023, after suspending me for pretextual reasons.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br><br>SIGNATURE OF COMPLAINANT |
| 10/10/2023 *Date* — *DocuSigned by:* 1CEFCE753DEB46D... *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EXHIBIT 6

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Chicago District Office**
230 S Dearborn Street
Chicago, IL 60604
(800) 669-4000
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

**To:** Ms. Tracy Cohen
c/o TH Law Firm
Tamara Holder
917 West Washington Boulevard Suite 222
Chicago, IL 60607

Charge No: 440-2023-08632

EEOC Representative and email:   TIEREN DOKES
Investigator
tieren.dokes@eeoc.gov

### DISMISSAL OF CHARGE

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 440-2023-08632.

On behalf of the Commission,

Digitally Signed By: Diane I. Smason
10/24/2023
Diane I. Smason
Acting District Director

**Cc:** Gucci America Inc
c/o McDermott Will & Emery LLP
Jean Edmonds
Please retain this notice for your records.

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request

identifying your request as a "FOIA Request" for Charge Number 440-2023-08632 to the District Director at Diane I. Smason, 230 S Dearborn Street Chicago, IL 60604.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 440-2023-08632 to the District Director at Diane I. Smason, 230 S Dearborn Street Chicago, IL 60604.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

### NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.**

- ✓ **Only one** major life activity need be substantially limited.

- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

- ✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

- ✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

- ✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

- ✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

- ✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

***Note:*** *Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

EXHIBIT 7

# THE LAW FIRM
### OF TAMARA N. HOLDER, LLC

917 W. WASHINGTON BLVD, STE. 222
CHICAGO, IL 60607

Tamara Holder
*Attorney at Law*

Phone: 312-440-9000
Email: tamara@tamaraholder.com
tamaraholder.com

October 24, 2023

To:     Tom Roeser, IDHR Pre-Investigation Coordinator
        via email to: tom.roeser@illinois.gov

             Re: REQUEST FOR CLOSURE NOTICE, TRACY COHEN v GUCCI

Mr. Roeser:

My office is requesting a notice of dismissal and order of closure from IDHR for my client, Tracy
Cohen's, charge against Gucci (EEOC Charge No 440-2023-08632). Attached please find the
EEOC's Dismissal and Notice of Rights for this charge.

Sincerely,

*/s/ Tamara Holder*
Tamara N. Holder

EXHIBIT 8

EEOC Received 12/11/2024

EEOC Form 5 (5/01)

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act
Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 440-2024-02289 |

| ILLINOIS DEPT. OF HUMAN RIGHTS | and EEOC |
|---|---|

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Ms. Tracy Cohen | 312-315-8521 | 1/22/1969 |

| Street Address | City, State and ZIP Code |
|---|---|
| 512 N. McClurg Ct., Unit 2212 | Chicago, IL 60611 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe
Discriminated Against Me or Others.  *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| Gucci America, Inc. | 15+ | 877-482-2430 |

| Street Address | City, State and ZIP Code |
|---|---|
| 50 Hartz Way | Secaucus, NJ 07094 |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| Kering | 15+ | 201-553-6947 |

| Street Address | City, State and ZIP Code |
|---|---|
| 150 Totowa Rd | Wayne, NJ 07470 |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN

☒ RETALIATION  ☒ AGE  ☒ DISABILITY  ☐ OTHER *(Specify below.)*

DATE(S) DISCRIMINATION TOOK PLACE

Earliest: ~1-2017   Latest: 10-4-2023

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I previously filed charges of discrimination - EEOC complaint numbers 440-2023-03224 and 440-2023-08632 - against
my employer Gucci d/b/a Gucci Chicago, located on Michigan Ave. Upon further review of my file, I believe I was
jointly employed entities including Kering, loaced in Wayne, NJ, and Gucci America, Inc., located in Secaucus, NJ. As a
result, I am filing this new charge, against these two additional employers, alleging they, too, retaliated against me for filing
a charge of discrimination on January 19 2023, in violation of Title VII of the Civil Rights Act of 1964, as Amended,
by first suspending me for 6-days, on July 6 2023, (for which I received I right to sue letter on October 24, 2023), then
taking the ultimate adverse employment action - terminating me - on October 4, 2023 while we were in this forum.  Prior
to filing my January 19, 2023 charge of discrimination, I worked for the employers for nearly 18 years, was a top
performer and #1 salesperson in the Chicago store, and had never been suspended.

I want this charge filed with both the EEOC and the State or local Agency, if any. I
will advise the agencies if I change my address or phone number and I will
cooperate fully with them in the processing of my charge in accordance with their
procedures.

NOTARY – *When necessary for State and Local Agency Requirements*

I swear or affirm that I have read the above charge and that it is true to
the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

I declare under penalty of perjury that the above is true and correct.

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
*(month, day, year)*

| 12/11/2023 | DocuSigned by: |
|---|---|
| *Date* | *Charging Party Signature* |

1CEFCE753DEB46D...

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | |

| ILLINOIS DEPARTMENT OF HUMAN RIGHTS | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)*<br>Ms. Tracy Cohen | Home Phone *(Incl. Area Code)*<br>312-315-8521 | Date of Birth<br>1/22/1969 |
|---|---|---|

| Street Address<br>512 N. McClurg Ct., Unit 2212 | City, State and ZIP Code<br>Chicago, IL 60611 |
|---|---|

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name<br>Gucci America, Inc. d/b/a Gucci Chicago | No. Employees, Members<br>15+ | Phone No. *(Include Area Code)*<br>312-664-5504 |
|---|---|---|

| Street Address<br>900 N Michigan Ave | City, State and ZIP Code<br>Chicago, IL 60611 |
|---|---|

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|

| Street Address | City, State and ZIP Code |
|---|---|

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☐ NATIONAL ORIGIN

☒ RETALIATION ☐ AGE ☒ DISABILITY ☐ OTHER *(Specify below.)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: ~1/2017    Latest:

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

On October 4, 2023, my employer terminated me in retaliation for complaining about discrimination, in violation of Title VII of the Civil Rights Act of 1964, as Amended. In response, I amended my pending charge of discrimination, dated July 25, 2023, to reflect my termination. That amendment was received by the EEOC on October 10, 2023. I received a right to sue letter on October 24, 2023. The amended charge did not include disability and sex discrimination. As a result, I am filing this new charge of discrimination, alleging disability (anxiety, depression) and sex (female) discrimination, as well as retaliation for complaining about those protected activities. I worked for the company for nearly 18 years, was a top performer and #1 salesperson, and had never been suspended. **I hereby adopt all the particulars in the charges that have been filed under EEOC complaint numbers 440-2023-03224 and 440-2023-08632.**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br><br>SIGNATURE OF COMPLAINANT |
| 12/11/2023     *DocuSigned by:* Tracy Cohen<br>1CEFCE753DEB46D...<br><br>Date       *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EXHIBIT 9

# G U C C I

**Gucci America Commission Plan - Commission Rate Form**

**Effective December 27, 2020**

Applicable to all U.S DOS & Leased Stores, excluding Wooster

The Gucci America Commission Plan has four main components:

| | |
|---|---|
| Base Commission | To motivate individual performance |
| Product Specific Commission | To motivate product specific performance |
| Individual Incentive Commission | To motivate seasonal/business strategy specific performance |
| Collaborative Commission | To motivate team performance |

---

This is the Commission Rate Form detailing the Commissions you are eligible to earn as a participant in the Gucci America, Inc. Commission Plan (the "Plan") as an eligible Gucci U.S. DOS or Leased store location Client Advisor or Lead Client Advisor.  This Rate Sheet is part of the Plan; all capitalized terms are defined as set forth in the Plan.

To be applicable, this Rate Sheet must have been attached to the Plan when provided to you.

**Commission Rates:**

1) **Base Commission:**
   Each Client Advisor is eligible to earn **3%** of your Net Sales (advance on Commissions paid bi-weekly, as described in the Plan).

2) **Product Specific Commission:**
   Each Client Advisor is eligible to earn a Top-Up (additional) Commission of **2%** of your Net Sales of merchandise within the RTW category, for a total Commission (when taken together with your Base Commission) of 5% of your Net Sales on such products (advance on Commissions paid by-weekly, as described in the Plan).

3) **Individual Incentive Commission:**

   Each Client Advisor is eligible to earn additional Commission payments based on cumulative individual Net Sales achieved in the corresponding Fiscal Year as follows:

| PERSONAL NET SALES LEVEL | COMMISSION PAYOUT LEVEL | CUMMULATIVE COMMISSION PAYOUT |
|---|---|---|
| 1 Million | **$5k** | $5k |
| 2 Million | **$10k** | $15k |
| 3 Million | **$15k** | $30k |
| 4 Million | **$20k** | $50k |

# G U C C I

Individual Incentive Commissions are cumulative throughout the Fiscal Year. For example, if you achieve $1 Million in Net Sales in a Fiscal Year and earn a $5k Individual Incentive Commission payment in accordance with the terms of the Plan, and later in that Fiscal Year you achieve $2 Million in Net Sales for that Fiscal Year, you will also be eligible to earn an additional $10k Individual Incentive Commission payment in accordance with the terms of the Plan, for a total potential Individual Incentive Commission payment of $15k.

Advance on the Individual Incentive Commission will be paid in the next paycheck that corresponds with the commission period in which the applicable Net Sales were achieved, as described in the Plan.

**4) Collaborative Commission:**

Each Client Advisor is eligible to earn an additional an additional % Commission on individual Net Sales within any calendar month in which the store overachieves its applicable Net Sales Target (as set by the Company from time to time in its sole discretion) as measured by the store's Net Sales for that month as follows:

| STORE NET SALES TARGET OVERACHIEVEMENT | ADDITIONAL COMMISSION % |
|---|---|
| +5% | **.25%** |
| +10% | **.5%** |
| +15% | **.75%** |
| +20% | **1%** |

Advance on the Collaborative Commission will be paid in the second paycheck of the month following the applicable overachievement, as described in the Plan.

Gucci U.S DOS Leased Commission Rate Form Acknowledgement

_____

Signature of Employee

_____

Print Name of Employee

_____

Dated:



# GUCCI

In the event your employment ends for any reason, you will be entitled to payment of Commissions for applicable sales made on or before the termination date, if earned in accordance with the terms of this Plan, regardless of whether they are earned prior to or after your termination date. Such Commissions will be paid in accordance with the terms of this Plan.

**At-Will Employment**
Nothing in this Plan is intended to alter the at-will nature of your employment relationship, that is, your right or the Company's right to terminate your employment at any time, with or without cause or advance notice.

**Miscellaneous**
This Plan contains the entire agreement between you and the Company on this subject, and supersedes all prior sales commission plans of the Company and all other previous oral or written statements to you regarding these subjects. The Company may, in its sole discretion, terminate, suspend, amend, replace or otherwise modify this Plan, in whole or in part, at any time. Any Commission that has been earned by you as of the date of such termination, suspension, amendment, replacement or modification, and that would otherwise be affected by the Company's action, will be paid to you in accordance with the terms of the Plan as in effect prior to the effective date of the Company's action. The Plan and all related documents shall be administered, construed, and enforced in accordance with the laws of the State of New York, notwithstanding any conflict of law provisions.

Sincerely,

Human Resources

Gucci U.S. DOS/Leased/Outlet Commission Plan Acknowledgement, excluding Wooster

**I acknowledge that I have received a signed copy of this Plan and the attached Commission Rate Form. I further acknowledge and agree that I have read and understand the provisions of this Plan and the attached Commission Rate Form and hereby accept its terms.**

signing but
not 100%
Clear on
understanding

_____
Signature of Employee

Tracy Cohen
_____
Print Name of Employee

1 | 7 | 21
_____
Dated:

Page 3 of 3
Effective 12/27/2020

CONFIDENTIAL



**Gucci America Commission Plan**

All U.S Stores, excluding Wooster

December 27, 2020

To all U.S. DOS/LEASED/OUTLET Client Advisors, except in Wooster:

This letter sets forth the terms of the commission plan ("Plan") applicable to you as a client advisor of Gucci America, Inc. ("Gucci" or the "Company"). These terms go into effect as of December 27, 2020 and shall remain in effect until terminated, suspended, amended, replaced or otherwise modified by the Company.

**Eligibility**

All Regular Full-Time or Part-Time (non-temporary and non-seasonal) Company employees holding the job title of Client Advisor or Lead Client Advisor in any Gucci DOS, Outlet or Leased store location in the United States, other than Gucci Wooster DOS, who receive this letter addressed to them are eligible to earn sales commissions under this Plan ("Commissions") as explained below.

**Commission Structure**

Base Commissions and Product Specific Commissions are earned based upon your individual sales achievement as measured by your Net Sales in each two-week sales period. "Net Sales" means gross sales, less taxes and regulatory fees, shipping charges, alteration/repair charges, discounts and returns.

Individual Incentive Commissions are earned based upon your individual sales achievement as measured by your Net Sales in the applicable Fiscal Year.

Collaborative Commissions are earned based upon your store's overachievement of its applicable Net Sales target as measured by the store's Net Sales in the applicable calendar month.

Please see the attached Commission Rate Form, which sets forth additional details regarding Base Commissions, Product Specific Commissions, Individual Incentive Commissions and Collaborative Commissions, as well as applicable commission rates.

**Timing and Payment of Commissions**

*Timing of Payment of Base Commissions and Product Specific Commissions*

As further explained below, all Commissions are earned on the 60th day after the sale, provided that the merchandise has not been returned and you continue to be employed by the Company. Nonetheless, the Company will pay you an advance on Base Commissions and Product Specific Commissions before they are earned. Specifically, all Commissions shall be calculated and provided to the Payroll Department within 10 business days following the end of the applicable two-week sales period. You will receive your advance on Base Commission and/or Product

# G U C C I

Specific Commission payment within two weeks after the Commission amounts have been submitted to Payroll (unless earlier payment is required by state law) on the normal payroll cycle.

## _Timing of Payment of Individual Incentive Commissions_

As further explained below, all Commissions are earned on the 60th day after the sale, provided that the merchandise has not been returned and you continue to be employed by the Company. Nonetheless, the Company will pay you an advance on Individual Incentive Commissions before they are earned. Specifically, you will receive your advance on Individual Incentive Commission payment in the next paycheck that corresponds with the commission period in which the applicable Net Sales were achieved.

## _Timing of Payment of Collaborative Commissions_

As further explained below, all Commissions are earned on the 60th day after the sale, provided that the merchandise has not been returned and you continue to be employed by the Company. Nonetheless, the Company will pay you an advance on Collaborative Commissions before they are earned. Specifically, you will receive your advance on Collaborative Commission payment in the second paycheck of the month following the applicable overachievement.

## _When Commissions are Earned_

With respect to all Base Commissions and Product Specific Commissions, on the 60th day after the sale, if the merchandise has not been returned, you will be deemed to have earned the Commission on that sale (even if the Company subsequently permits the return of the merchandise). If the merchandise is returned within sixty (60) days after the sale, then you will not have earned the Base Commission and/or Product Specific Commission for that sale, and you will be required to refund any advance on Commission paid to you by the Company (unless otherwise required by law). This is typically handled through offsets against future advances on Commissions.

With respect to all Individual Incentive Commissions and Collaborative Commissions, on the later of (i) the date on which you achieve the applicable Net Sales amount (with respect to Individual Incentive Commissions) or the date on which your store overachieves its applicable Net Sales target and (ii) the 60th day after the sale, if the merchandise has not been returned, you will be deemed to have earned the Individual Incentive Commission and/or Collaborative Commission, as applicable (even if the Company subsequently permits the return of the merchandise included in the calculation of the Net Sales for such Commissions). If any merchandise included in the Calculation of the Net Sales for such Commissions is returned within sixty (60) days after the sale and that return results in the applicable Net Sales not being achieved for purposes of the Individual Incentive Commission and/or Collaborative Commission, then you will not have earned the Individual Incentive Commission and/or Collaborative Commission, as applicable, and you will be required to refund any advance on Commission paid to you by the Company (unless otherwise required by law). This is typically handled through offsets against future advances on Commissions. However, this will not impact your eligibility to earn future Individual Incentive Commission payments based on future Net Sales, in accordance with this Plan.

## _Withholdings and Deductions_

All commissions are subject to withholdings and deductions as required by applicable law and/or authorized by you.

## **Termination**

# G U C C I

In the event your employment ends for any reason, you will be entitled to payment of Commissions for applicable sales made on or before the termination date, if earned in accordance with the terms of this Plan, regardless of whether they are earned prior to or after your termination date. Such Commissions will be paid in accordance with the terms of this Plan.

**At-Will Employment**
Nothing in this Plan is intended to alter the at-will nature of your employment relationship, that is, your right or the Company's right to terminate your employment at any time, with or without cause or advance notice.

**Miscellaneous**
This Plan contains the entire agreement between you and the Company on this subject, and supersedes all prior sales commission plans of the Company and all other previous oral or written statements to you regarding these subjects. The Company may, in its sole discretion, terminate, suspend, amend, replace or otherwise modify this Plan, in whole or in part, at any time.  Any Commission that has been earned by you as of the date of such termination, suspension, amendment, replacement or modification, and that would otherwise be affected by the Company's action, will be paid to you in accordance with the terms of the Plan as in effect prior to the effective date of the Company's action. The Plan and all related documents shall be administered, construed, and enforced in accordance with the laws of the State of New York, notwithstanding any conflict of law provisions.


Sincerely,

Human Resources


Gucci U.S. DOS/Leased/Outlet Commission Plan Acknowledgement, excluding Wooster

**I acknowledge that I have received a signed copy of this Plan and the attached Commission Rate Form. I further acknowledge and agree that I have read and understand the provisions of this Plan and the attached Commission Rate Form and hereby accept its terms.**



Signature of Employee


Print Name of Employee


Dated:

EXHIBIT 10

# G U C C I

**Gucci America Commission Plan - Commission Rate Form**

**Effective January 9 , 2022**

Applicable to all U.S DOS & Leased Stores, excluding Wooster

The Gucci America Commission Plan has four main components:

| | |
|---|---|
| Base Commission | To motivate individual performance within each sales period |
| Product Specific Commission | To motivate individual performance for specific product/business strategy |
| Individual Incentive Commission period | To motivate individual performance within the applicable annual |
| Team Commission | To motivate team performance for specific business targets |

This is the Commission Rate Form detailing the Commissions you are eligible to earn as an eligible Participant in the Gucci America, Inc. Commission Plan (the "Plan"). This Rate Sheet is part of the Plan; all capitalized terms are defined as set forth in the Plan.

To be applicable, this Rate Sheet must have been attached to the Plan when provided to you.

**Commission Rates:**

1) **Base Commission:**
   Each Participant is eligible to earn **3%** of your Net Sales (advance on Commissions paid bi-weekly, as described in the Plan).

2) **Product Specific Commission:**
   Each Participant is eligible to earn a Top-Up (additional) Commission of **2%** of your Net Sales of merchandise with an individual SKU price equal or greater to $2,000.00, for a total Commission (when taken together with your Base Commission) of up to 5% of your Net Sales on such eligible products (advance on Commissions paid by-weekly, as described in the Plan).

3) **Individual Incentive Commission:**

   Each Participant is eligible to earn additional Commission payments and/or an Employee Online store credit based on cumulative individual Net Sales achieved in the corresponding Fiscal Year as follows:

# G U C C I

| PERSONAL NET SALES LEVEL | COMMISSION PAYOUT LEVEL | CUMMULATIVE COMMISSION PAYOUT |
|---|---|---|
| 1 Million | **n/a** | $1000 Employee Online Store Credit |
| 2 Million | **$10k** | $10k + $1000 Employee Online Store Credit |
| 3 Million | **$15k** | $25k + $1000 Employee Online Store Credit |
| 4 Million | **$20k** | $45k + $1000 Employee Online Store Credit |
| 5 Million | **$25K** | $70K + $1000 Employee Online Store Credit |

Individual Incentive Commissions are cumulative throughout the Fiscal Year. For example, if you achieve $2 Million in Net Sales in a Fiscal Year and earn a $10k Individual Incentive Commission payment in accordance with the terms of the Plan, and later in that Fiscal Year you achieve $3 Million in Net Sales for that Fiscal Year, you will also be eligible to earn an additional $15k Individual Incentive Commission payment in accordance with the terms of the Plan, for a total potential Individual Incentive Commission payment of $25k.

Advance on the Individual Incentive Commission will be paid in the next paycheck that corresponds with the commission period in which the applicable Net Sales were achieved, as described further in the Plan.

Information regarding how to redeem the Employee Online store credit will be shared no later than the month after the achievement of the 1 Million in Net Sales.

**4) Team Commission:**

Each Participant is eligible to earn additional Commission on the store's Net Sales within any calendar month in which the store overachieves its applicable commercial Net Sales Target (as set by the Company from time to time in its sole discretion) with the potential for increased additional Commission if the store also meets or exceeds its monthly NPS goal (as set by the Company from time to time in its sole discretion).

If the store overachieves its commercial Net Sales Target, the difference between Net Sales Target and the actual Net Sales will be eligible for the application of additional commission percentage to be shared by the team. This will establish the amount of Team Commission to be distributed. The Team Commission will be distributed to each applicable Participant proportionate to the percentage of individual Net Sales contributed to the total store Net Sales for the calendar month.

If the store meets or overachieves its target NPS goal in addition to the over achievement of its Net Sales Target, an additional commission will be applied to the calculation of Team Commission to be distributed.

# G U C C I

| STORE NET SALES TARGET OVER ACHIEVEMENT | ADDITIONAL COMMISSION % APPLIED TO THE DIFFERENCE BETWEEN TARGET AND ACTUAL TO ESTABLISH TEAM COMMISSION POOL | ADDITIONAL COMMISISON % APPLIED TO THE DIFFERENCE BETWEEN TARGET AND ACTUAL TO ESTABLISH TEAM COMMISSION POOL IF BOTH NET SALES AND NPS TARGETS ARE MET |
|---|---|---|
| 100% – 120% | **1%** | **+2%** |
| Over 120% | **2%** | **+4%** |

Advance on the Team Commission will be paid in the second paycheck of the month following the applicable overachievement, as described in the Plan.

Gucci U.S DOS Leased Commission Rate Form Acknowledgement

_____
Signature of Employee

_____
Print Name of Employee

_____
Dated:



**Gucci America Commission Plan**

All U.S Stores, excluding Wooster

January 09, 2022

To all U.S. DOS/LEASED/OUTLET Client Advisors, except in Wooster:

This letter sets forth the terms of the commission plan ("Plan") applicable to you as a Client Advisor of Gucci America, Inc. ("Gucci" or the "Company"). These terms go into effect as of January 9 , 2022 and shall remain in effect until terminated, suspended, amended, replaced or otherwise modified by the Company.

**Eligibility**

All Regular Full-Time or Part-Time (non-temporary and non-seasonal) Company employees holding the job title of Client Advisor or Lead Client Advisor in any Gucci DOS, Outlet or Leased store location in the United States, other than Gucci Wooster DOS, who receive this letter addressed to them (each a "Participant") are eligible to earn sales commissions under this Plan ("Commissions") as explained below.

**Commission Structure**

Base Commissions and Product Specific Commissions are calculated based upon your individual sales achievement as measured by your Net Sales in each two-week sales period. "Net Sales" means gross sales, less taxes and regulatory fees, shipping charges, alteration/repair charges, discounts and returns.

Individual Incentive Commissions are calculated based upon your individual sales achievement as measured by your Net Sales in the applicable Fiscal Year.

Team Commissions are calculated based upon your store's overachievement of its applicable commercial Net Sales target as measured by the store's Net Sales in the applicable calendar month and the achievement of the store's monthly Net Promotor Score ("NPS") goal.

Please see the attached Commission Rate Form, which sets forth additional details regarding Base Commissions, Product Specific Commissions, Individual Incentive Commissions and Team Commissions, as well as applicable commission rates.

**Timing and Payment of Commissions**

*Timing of Payment of Base Commissions and Product Specific Commissions*

As further explained below, all Commissions are earned on the 60th day after the sale, provided that the merchandise has not been returned and you continue to be employed by the Company. Nonetheless, the Company will pay you an advance on Base Commissions and Product Specific Commissions before they are earned. Specifically, all Commissions shall be calculated and provided to the Payroll Department within 10 business days following the end of the applicable two-week sales period. You will receive your advance on Base Commission and/or Product

# G U C C I

Specific Commission payment within two weeks after the Commission amounts have been submitted to Payroll (unless earlier payment is required by state law) on the normal payroll cycle.

### *Timing of Payment of Individual Incentive Commissions*

As further explained below, all Commissions are earned on the 60th day after the sale, provided that the merchandise has not been returned and you continue to be employed by the Company. Nonetheless, the Company will pay you an advance on Individual Incentive Commissions before they are earned. Specifically, you will receive your advance on Individual Incentive Commission payment in the next paycheck that corresponds with the commission period in which the applicable Net Sales were made.

### *Timing of Payment of Team Commissions*

As further explained below, all Commissions are earned on the 60th day after the sale, provided that the merchandise has not been returned and you continue to be employed by the Company. Nonetheless, the Company will pay you an advance on Team Commissions before they are earned. Specifically, you will receive your advance on Team Commission payment in the second paycheck of the month following the applicable overachievement.

### *When Commissions are Earned*

With respect to all Base Commissions and Product Specific Commissions, on the 60th day after the sale, if the merchandise has not been returned, you will be deemed to have earned the Commission on that sale (even if the Company subsequently permits the return of the merchandise). If the merchandise is returned within sixty (60) days after the sale, then you will not have earned the Base Commission and/or Product Specific Commission for that sale, and you will be required to refund any advance on Commission paid to you by the Company (unless otherwise required by law). This is typically handled through offsets against future advances on Commissions.

With respect to all Individual Incentive Commissions and Team Commissions, on the later of (i) the date on which you achieve the applicable Net Sales amount (with respect to Individual Incentive Commissions) or the date on which your store overachieves its applicable Net Sales target (with respect to Team Commissions) and (ii) the 60th day after the sale, if the merchandise has not been returned, you will be deemed to have earned the Individual Incentive Commission and/or Team Commission, as applicable (even if the Company subsequently permits the return of the merchandise included in the calculation of the Net Sales for such Commissions). If any merchandise included in the calculation of the Net Sales for such Commissions is returned within sixty (60) days after the sale and that return results in the applicable Net Sales not being achieved for purposes of the Individual Incentive Commission and/or Team Commission, then you will not have earned the Individual Incentive Commission and/or Team Commission, as applicable, and you will be required to refund any advance on Commission paid to you by the Company (unless otherwise required by law). This is typically handled through offsets against future advances on Commissions. However, this will not impact your eligibility to earn future Individual Incentive Commission payments based on future Net Sales, in accordance with this Plan.

### *Withholdings and Deductions*

All commissions are subject to withholdings and deductions as required by applicable law and/or authorized by you.

# G U C C I

**Termination**
In the event your employment ends for any reason, you will be entitled to payment of Commissions for applicable sales made on or before the termination date, if earned in accordance with the terms of this Plan, regardless of whether they are earned prior to or after your termination date. Such Commissions will be paid in accordance with the terms of this Plan.

**At-Will Employment**
Nothing in this Plan is intended to or shall alter the at-will nature of your employment relationship, that is, your right or the Company's right to terminate your employment at any time, with or without cause or advance notice.

**Miscellaneous**
This Plan (including the Commission Rate Form) contains the entire agreement between you and the Company on this subject, and supersedes all prior sales commission plans of the Company and all other previous oral or written statements to you regarding these subjects. The Company may, in its sole discretion, terminate, suspend, amend, replace or otherwise modify this Plan, in whole or in part, at any time. Any Commission that has been earned by you as of the date of such termination, suspension, amendment, replacement or modification, and that would otherwise be affected by the Company's action, will be paid to you in accordance with the terms of the Plan as in effect prior to the effective date of the Company's action. The Plan and all related documents shall be administered, construed, and enforced in accordance with the laws of the State of New York, notwithstanding any conflict of law provisions.


Sincerely,

Human Resources


Gucci U.S. DOS/Leased/Outlet Commission Plan Acknowledgement, excluding Wooster

**I acknowledge that I have received a signed copy of this Plan and the attached Commission Rate Form. I further acknowledge and agree that I have read and understand the provisions of this Plan and the attached Commission Rate Form and hereby accept its terms.**

_____
Signature of Employee

_____
Print Name of Employee

_____
Dated:

EXHIBIT 11

**Tamara Holder** <tamara@tamaraholder.com>               Wed, Sep 28, 2022 at 9:11 PM
To: mar.bizz@gucci.com
Cc: amy.hannaford@gucci.com, tommaso.devecchi@gucci.com
Bcc: Tamara Dropbox <dropbox@28299585.lawfirmtamaraholder.highrisehq.com>

(LETTER ATTACHED AS PDF)

September 28, 2022

VIA EMAIL: mar.bizz@gucci.com

Mr. Marco Bizzarri
Chief Executive Officer
Gucci

Dear Mr. Bizzarri:

Please be advised that my firm represents Ms. Tracy Cohen related to her claims against Gucci for employment discrimination and retaliation. **Ms. Cohen has been a top sales performer (both online and in-store) for nearly 17-years; she is also Gucci Chicago's oldest salesperson (53).**

On a personal note, I write this letter with a heavy heart. As a women's rights attorney, I have proudly worn Gucci on international television news networks, and during press conferences, while challenging how women are treated in the workplace. As a loyal customer, I am disgusted by how Gucci is treating a female employee who is, unquestionably, one its most valuable salespeople in the world.

As just one example, during the COVID-19 pandemic, despite the stores being closed, Ms. Cohen sold over $3.6M USD in Gucci product in 2019. She was also one of the first employees to offer to return to the store when it reopened.

And yet, for years now, Gucci has consistently given Ms. Cohen empty promises, and engaged in organized, retaliatory efforts to hurt her sales/income. Meanwhile, Ms. Cohen has watched her younger, male colleagues receive assistants, thereby allowing them to surpass her in sales/commission and earning potential. When Ms. Cohen has complained to management about Gucci's discriminatory assistant practices, she has been written up for pretextual reasons, immediately following her complaints.

In 2017, Gucci promised Ms. Cohen that if she reached $2.5M USD in sales, she would get an assistant, just as it given to her male predecessor, David Benjamin, when he reached $2.5M USD. And yet, despite Ms. Cohen reaching $2.5M USD, Gucci refused to provide her with an assistant. Immediately following her complaint of discrimination, Ms. Cohen was written-up for the first time ever for a pretextual reason.

In March 2022, Ms. Cohen reached out to Mr. Tommaso De Vecchi, Gucci's Executive Vice President of Retail and Wholesale, who is cc'd here. He, too, promised her an assistant that never arrived.
Meanwhile, several months ago, Gucci gave Jose Mesa (Bal Harbour) an assistant, despite being behind Ms. Cohen in sales in 2021. As a result, he has now surpassed her in YTD sales by nearly $800,000 USD. Gucci also gave Noe Gaona (Costa Mesa) an apprentice last year, allowing him to surpass Ms. Cohen in sales.

Yesterday, Ms. Cohen complained to management about still not having her promised assistant. Then, today, Gucci pulled Ms. Cohen from her shift, to notify her that she was being written-up for a customer incident. And yet, when the incident occurred nearly a month ago, Ms. Cohen immediately complained to management about the customers' abusive treatment of her. It is important to note that Ms. Cohen has perfect NPS scores for the month of September.

I have also cc'd one of Ms. Cohen's managers, Ms. Amy Hannaford. Ms. Cohen has complained multiple times to Ms. Hannaford, and her other managers too, about her feelings of discrimination, only to be ignored or retaliated against.

Even more stunning is Gucci's public façade that it is a brand for all ages yet, in reality, it internally engages in discrimination and ageism toward both its clients and employees alike. As just one example, when Ms. Cohen nominated an older male client for Billie Eilish tickets earlier this year, management denied her request, writing, "...I believe corporate is looking for Gen Z or Millennial clients...He may be suited for Elton John."

We intend to file a complaint against Gucci for its discriminatory conduct. If you are interested in resolving this matter outside of litigation, please contact me.

In the meantime, I ask you to review Ms. Cohen's exemplary sales history and reputation: She is loved by her clients all over the world, and has been a consistent, top performer for Gucci for nearly two decades.

Sincerely,

Tamara Holder

    CC:    Ms. Amy Hannaford: amy.hannaford@gucci.com
             Mr. Tommaso De Vecchi: tommaso.devecchi@gucci.com

--



*Tamara Holder, Attorney at Law* (she/her)
917 W. Washington Blvd., Ste. 222
Chicago, IL 60607
Phone: 312-440-9000
Email: tamara@tamaraholder.com
Web: tamaraholder.com

📄 **2022-9-28 - Cohen, Tracy - Gucci Letter.pdf**
122K

# THE LAW FIRM
## OF TAMARA N. HOLDER, LLC

917 W. WASHINGTON BLVD, STE. 222
CHICAGO, IL 60607

Tamara Holder
*Attorney at Law*

Phone: 312-440-9000
Email: tamara@tamaraholder.com
tamaraholder.com

September 28, 2022

VIA EMAIL: mar.bizz@gucci.com

Mr. Marco Bizzarri
Chief Executive Officer
Gucci

Dear Mr. Bizzarri:

Please be advised that my firm represents Ms. Tracy Cohen related to her claims against Gucci for employment discrimination and retaliation. Ms. Cohen has been a top sales performer (both online and in-store) for nearly 17-years; she is also Gucci Chicago's oldest salesperson (53).

On a personal note, I write this letter with a heavy heart. As a women's rights attorney, I have proudly worn Gucci on international television news networks, and during press conferences, while challenging how women are treated in the workplace. As a loyal customer, I am disgusted by how Gucci is treating a female employee who is, unquestionably, one its most valuable salespeople in the world.

As just one example, during the COVID-19 pandemic, despite the stores being closed, Ms. Cohen sold over $3.6M USD in Gucci product in 2019. She was also one of the first employees to offer to return to the store when it reopened.

And yet, for years now, Gucci has consistently given Ms. Cohen empty promises, and engaged in organized, retaliatory efforts to hurt her sales/income. Meanwhile, Ms. Cohen has watched her younger, male colleagues receive assistants, thereby allowing them to surpass her in sales/commission and earning potential. When Ms. Cohen has complained to management about Gucci's discriminatory assistant practices, she has been written up for pretextual reasons, immediately following her complaints.

In 2017, Gucci promised Ms. Cohen that if she reached $2.5M USD in sales, she would get an assistant, just as it given to her male predecessor, David Benjamin, when he reached $2.5M USD. And yet, despite Ms. Cohen reaching $2.5M USD, Gucci refused to provide her with an assistant. Immediately following her complaint of discrimination, Ms. Cohen was written-up for the first time ever for a pretextual reason.

In March 2022, Ms. Cohen reached out to Mr. Tommaso De Vecchi, Gucci's Executive Vice President of Retail and Wholesale, who is cc'd here. He, too, promised her an assistant that never arrived.

Meanwhile, several months ago, Gucci gave Jose Mesa (Bal Harbour) an assistant, despite being behind Ms. Cohen in sales in 2021. As a result, he has now surpassed her in YTD sales by nearly $800,000 USD. Gucci also gave Noe Gaona (Costa Mesa) an apprentice last year, allowing him to surpass Ms. Cohen in sales.

Yesterday, Ms. Cohen complained to management about still not having her promised assistant. Then, today, Gucci pulled Ms. Cohen from her shift, to notify her that she was being written-up for a customer incident. And yet, when the incident occurred nearly a month ago, Ms. Cohen immediately complained to management about the customers' abusive treatment of her. It is important to note that Ms. Cohen has perfect NPS scores for the month of September.

I have also cc'd one of Ms. Cohen's managers, Ms. Amy Hannaford. Ms. Cohen has complained multiple times to Ms. Hannaford, and her other managers too, about her feelings of discrimination, only to be ignored or retaliated against.

Even more stunning is Gucci's public façade that it is a brand for all ages yet, in reality, it internally engages in discrimination and ageism toward both its clients and employees alike. As just one example, when Ms. Cohen nominated an older male client for Billie Eilish tickets earlier this year, management denied her request, writing, "...I believe corporate is looking for Gen Z or Millennial clients...He may be suited for Elton John."

We intend to file a complaint against Gucci for its discriminatory conduct. If you are interested in resolving this matter outside of litigation, please contact me.

In the meantime, I ask you to review Ms. Cohen's exemplary sales history and reputation: She is loved by her clients all over the world, and has been a consistent, top performer for Gucci for nearly two decades.

Sincerely,

Tamara Holder

CC:     Ms. Amy Hannaford: amy.hannaford@gucci.com
        Mr. Tommaso De Vecchi: tommaso.devecchi@gucci.com